<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

```
ERNESTO GALARZA              )
                             )   Civil Action
            Plaintiff        )   No. 10-cv-06815
                             )
        vs.                  )
                             )
MARK SZALCZYK,               )
GREG MARINO, and             )
CHRISTIE CORREA, in their    )
  individual capacities, and )
CITY OF ALLENTOWN, and       )
LEHIGH COUNTY,               )
                             )
            Defendants       )
```

                    *    *    *

APPEARANCES:

     VALERIE A. BURCH, ESQUIRE
     JONATHAN H. FEINBERG, ESQUIRE
     MARY CATHERINE ROPER, ESQUIRE, and
     SEEMA SAIFEE, ESQUIRE
          On behalf of Plaintiff


     TONY WEST, ESQUIRE
             Assistant Attorney General
     COLIN A. KISOR, ESQUIRE
             Senior Litigation Counsel, and
     KIRSTEN A. DAUBLER, ESQUIRE
             Trial Attorney
          On behalf of Defendants
          Mark Szalczyk and Greg Marino


     ANDREW B. ADAIR, ESQUIRE
          On behalf of Defendants
          Christie Correa, and
          City of Allentown, and


     THOMAS M. CAFFREY, ESQUIRE
          On behalf of Defendant
          Lehigh County

                    *    *    *

O P I N I O N

JAMES KNOLL GARDNER
United States District Judge

This matter is before the court on four motions which seek to dismiss plaintiff's Amended Complaint:

    (1)    Defendant Mark Szalczyk's Motion to Dismiss the Amended Complaint, which motion was filed May 20, 2011 (Document 55);

    (2)    Defendant Gregory Marino's Motion to Dismiss the Amended Complaint, which motion was filed June 17, 2011 (Document 62);

    (3)    Defendants, City of Allentown and Christie Correa's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6), which motion was filed April 25, 2011 (Document 51); and

    (4)    Defendant Lehigh County's Motion to Dismiss the First Amended Complaint Under F.R.C.P. 12(b)(6), which motion was filed April 25, 2011 (Document 50).

Plaintiff filed a separate memorandum in opposition to each motion to dismiss. Defendant Szalczyk filed a reply brief in support of his motion. The motions having been fully briefed and oral argument having been held before me on December 15, 2011, the matter is ripe for disposition. Hence this Opinion.

INTRODUCTION

Paragraph 1 of the Amended Complaint filed April 6, 2011 provides the following "Preliminary Statement" of the case:

> Plaintiff Ernesto Galarza is a United States Citizen who was born in New Jersey. Local and federal officials nonetheless collaborated to imprison him at the Lehigh County Prison for three days based on the groundless belief that he might

-2-

> be an undocumented and deportable "alien."
> Plaintiff brings this action under the Fourth,
> Fifth and Fourteenth Amendments to the United
> States Constitution, 42 U.S.C. § 1983 and the
> authority of *Bivens v. Six Unknown Named Agents of
> Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Indeed, Attorney Jonathan H. Feinberg, the first of three counsel for plaintiff to address the court during oral argument on these motions to dismiss, sounded a note similar to the Preliminary Statement when he said:

> I think there is a substantial risk in this case
> where we have a lot of defendants and a lot of
> discrete legal issues, of losing the forest for
> the trees.  And the fact is, this case is quite
> straightforward.
>
> Ernesto Galarza is a United States citizen.  As a
> result of the actions of these defendants, he was
> held on an immigration detainer.
>
> That is wrong.  It violated his constitutional
> rights.  And that's the reason we're here.  And we
> can get lost in these legal issues, and I would
> suggest to the Court, though, the issue is really
> quite simple.[1]

Defendants do not dispute that Mr. Galarza is a United States citizen or that a jury subsequently acquitted him of the charge on which he was arrested November 20, 2008,[2] which arrest

---

[1]     Transcript of Hearing held December 15, 2011 ("N.T."), at pages 27-28.

[2]     On Thursday, November 20, 2008, Juan Santilme allegedly sold cocaine to defendant Christie Correa, an Allentown, Pennsylvania police officer who was working in an undercover capacity.  On that date, plaintiff Galarza was charged with, and arrested for, conspiring with Santilme and two other arrestees, Joel Cruz and Luis Aponte-Maldonado, to deliver cocaine in violation of Pennsylvania law.  On April 26, 2010 a jury acquitted plaintiff Galarza of the crime for which he had been arrested on November 20, 2008. (Amended Complaint at ¶¶ 28-31, 86.)

set the events in motion which led to this federal civil rights action.  It is not difficult to contemplate why Mr. Galarza feels aggrieved by the events of November 20 through 24, 2008, or how his subsequent acquittal would have magnified those feelings.

However, the question presently before the court is not whether Mr. Galarza's feelings are reasonable or unreasonable, or whether it is "wrong", in a guttural sense, that a United States citizen was held in a county prison on an immigration detainer after he had posted bail and was otherwise entitled to be released.

The question presently before the court is whether or not plaintiff has plead sufficient facts in his Amended Complaint to establish a plausible entitlement to relief from the claims which he asserts.

<u>SUMMARY OF DECISION</u>

For the following reasons, I grant in part and deny in part the motion to dismiss filed by defendant Mark Szalczyk. Specifically, I grant defendant Szalczyk's motion and dismiss the procedural due process claim against him based upon qualified immunity.  However, I deny defendant Szalzcyk's motion to dismiss plaintiff's Fourth Amendment and equal protection claims because plaintiff has sufficiently pled those claims and defendant Szalczyk is not entitled to qualified immunity on those claims based upon the facts alleged in the Amended Complaint.

-4-

I grant, in its entirety, the motion to dismiss filed by defendant Greg Marino and dismiss all claims against defendant Marino because he is entitled to qualified immunity based upon the facts alleged in the Amended Complaint.

I grant in part and deny in part the motion to dismiss filed by defendant Christie Correa and defendant City of Allentown.  I grant the motion and dismiss all claims against the City because plaintiff has not sufficiently stated a claim based upon an unconstitutional policy or custom, or a failure to train its police officers.

I grant the motion to dismiss to the extent it seeks to dismiss the procedural due process claim against defendant Correa because plaintiff does not oppose dismissal of the due process claim against defendant Correa.  I deny the motion to the extent it seeks to dismiss plaintiff's Fourth Amendment and equal protection claims against defendant Christie Correa because plaintiff has sufficiently pled those claims and defendant Correa is not entitled to qualified immunity on those claims based upon the facts alleged in the Amended Complaint.

Finally, I grant, in its entirety, the motion to dismiss filed by defendant Lehigh County and dismiss all claims against Lehigh County because the policy for which plaintiff seeks to hold Lehigh County liable is nondiscriminatory, as well as mandated by federal regulations.

-5-

JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to plaintiff's claims allegedly occurred in the Allentown, Lehigh County, Pennsylvania, which is within this judicial district.

PROCEDURAL HISTORY

Plaintiff initiated this civil rights action by filing a Complaint (Document 1) on November 19, 2010.  Plaintiff's initial Complaint named Mark Szalczyk, Stephanie Fritzges, "ICE Does 1-5", "Allentown Does 6-10", and "Lehigh County Does 11-15", the City of Allentown, and Lehigh County as defendants.

On January 26, 2011 plaintiff filed a Motion for Leave to Conduct Limited Expedited Doe Discovery (Document 19).

Upon motion by the plaintiff which was granted by my Order dated March 14, 2011 and filed March 15, 2011 (Document 32), Stephanie Fritzges was dismissed as a defendant in this action.

Plaintiff's motion for leave to conduct limited expedited discovery was granted by Order and accompanying Memorandum of United States Magistrate Judge Henry S. Perkin dated March 21, 2011 (Documents 39 and 38, respectively).

On March 21, 2011 plaintiff filed a Motion for Leave to File First Amended Complaint to Add Parties and Allegations Resulting from Doe Discovery (Document 35).

By Order dated April 5 and filed April 6, 2011 (Document 45), I granted as unopposed plaintiff's motion for leave to file an amended complaint and gave plaintiff until April 25, 2011 to do so.

Plaintiff filed his First Amended Complaint on April 6, 2011 (Document 46)("Amended Complaint").  The Amended Complaint named Mark Szalczyk, Greg Marino, and Christie Correa, in their individual capacities, and the City of Allentown, and Lehigh County as defendants.  Plaintiff did not name any Doe defendants in his Amended Complaint.  Each of the named defendants now seek to dismiss plaintiff's Amended Complaint.

Oral argument was held before me on December 15, 2011 on each of the four defense motions to dismiss.  At the conclusion of oral argument I took the matter under advisement. Hence this Opinion.

### STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102,

2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by

Bell Atlantic Corporation v. Twombly, 550 U.S. 544,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Generally, in ruling on a motion to dismiss, the court

relies on the complaint, attached exhibits, and matters of public

record, including other judicial proceedings.  Sands v.

McCormick, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil

Procedure 9, a complaint is sufficient if it complies with

Rule 8(a)(2), which requires "a short and plain statement of the

claim showing that the pleader is entitled to relief."

Fed.R.Civ.P. 8(a)(2).  Rule 8(a)(2) "[does] not require

heightened fact pleading of specifics, but only enough facts to

state a claim to relief that is plausible on its face."  Twombly,

550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[3]

In determining whether a plaintiff's complaint is

sufficient, the court must "accept all factual allegations as

---

[3]     The Opinion of the United States Supreme Court in Ashcroft v.
Iqbal, 556 U.S. 662, ___, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009),
states clearly that the  "facial plausibility" pleading standard set forth in
Twombly applies to all civil suits in the federal courts.  Fowler v. UPMC
Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

        This showing of facial plausibility then "allows the court to draw
the reasonable inference that the defendant is liable for the misconduct
alleged," and that the plaintiff is entitled to relief.  Fowler, 578 F.3d at
210 (quoting Iqbal, 556 U.S. at ___, 129 S.Ct.  at 1949, 173 L.Ed.2d at 884).

        As the Supreme Court explained in Iqbal, "[t]he plausibility
standard is not akin to a 'probability requirement,' but it asks for more than
a sheer possibility that the defendant acted unlawfully."  Iqbal, 556 U.S.
at ___, 129 S.Ct. at 1949, 173 L.Ed.2d at 884.

true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief." <u>Fowler</u>, 578 F.3d at 210 (<u>quoting</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory or 'bare-bones' allegations will [not] survive a motion to dismiss," <u>Fowler</u>, 578 F.3d at 210, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." <u>Phillips</u>, 515 F.3d at 231.  Nonetheless, to survive a 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." <u>Id.</u> (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotation omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion.  First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted therein. <u>Fowler</u>, 578 F.3d at 210.  Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded.  <u>Id.</u> at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a

"plausible claim for relief."  <u>Id.</u> at 211 (<u>quoting</u> <u>Iqbal</u>, 556 U.S. at __, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible."  <u>Iqbal</u>, 556 U.S. at __, 129 S.Ct. at 1950-1951, 178 L.Ed.2d at 884-885 (internal quotations omitted).

A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

<u>FACTS</u>

Based upon the averments in plaintiff's Amended Complaint, which I must accept as true under the foregoing standard of review, the pertinent facts are as follows.

<u>Parties</u>

Plaintiff Ernesto Galarza is a 36-year-old male who resides in Allentown, Lehigh County, Pennsylvania and resided here at all times relevant to this action.  He was born in Perth

Amboy, New Jersey.  Mr. Galarza is Hispanic, specifically of
Puerto Rican heritage.  He speaks English and Spanish.[4]

At the time of these events, defendant Mark Szalcyzk
("Officer Szalczyk") was a Deportation Officer employed by United
States Immigration and Customs Enforcement, United States
Department of Homeland Security ("ICE").[5]  Defendant Greg Marino
("Officer Marino") was employed by ICE in its Allentown,
Pennsylvania office.[6]  In this lawsuit, Officers Szalczyk and
Marino are both being sued in their individual capacities.[7]  At
all relevant times, Officers Szalczyk and Marino were acting
within the scope of their employment with ICE, a federal
executive agency.[8]

Defendant City of Allentown ("City" or "Allentown") is
a political subdivision of the Commonwealth of Pennsylvania and
operates the Allentown Police Department ("APD").[9]  Defendant
Christie Correa ("Detective Correa") was at all relevant times a
narcotics investigator with APD.  She is also being sued in her

---

[4]     Amended Complaint at ¶¶ 4, 24-27.

[5]     Id. at ¶ 5.

[6]     Id. at ¶ 6.

[7]     Id. at ¶¶ 5-6.

[8]     Id. at ¶ 7.

[9]     Id. at ¶ 8.

-11-

individual capacity.[10]  At all relevant times, Detective Correa was acting in the scope of her employment with the APD.[11]

Defendant Lehigh County is a political subdivision of the Commonwealth of Pennsylvania.  Lehigh County operates the Lehigh County Prison.

### Collaborative Efforts of ICE and the APD

The APD and ICE cooperate to identify and imprison persons suspected of being "aliens" subject to deportation.[12]  As part of this cooperation, APD officers actively work with ICE to identify aliens who have committed criminal offenses within the City and take appropriate steps for deportation where warranted.[13]

As part of this collaboration, the APD conducts "periodic operations", which the police also term "round ups", to apprehend undocumented immigrants who have committed crimes. These operations resulted in the apprehension of 120 people in 2006.[14]  Detective Correa, and Officers Szalczyk and Marino participated in the collaborative efforts between APD and ICE.[15]

_____

[10]     Amended Complaint at ¶ 9.

[11]     Id. at ¶ 10.

[12]     Id. at ¶12.

[13]     Id. at ¶ 13.

[14]     Id. at ¶ 14.

[15]     Id. at ¶ 21.

Until March 2007, ICE maintained an office within the APD where an ICE special agent reviewed APD arrest reports and sought to identify arrestees subject to deportation.[16]

In November 2008, when plaintiff was arrested and detained, ICE no longer had an agent posted within the APD. However, ICE and APD employees continued to collaborate from their separate offices in Allentown.[17]  APD personnel regularly communicate with ICE personnel regarding arrestees suspected of being aliens subject to deportation.[18]

The City has never provided training to APD officers or arranged for them to receive training regarding (1) how to investigate a person's immigration status; (2) when to provide arrestees' information to ICE; or (3) what arrestee information should be provided to ICE.[19]  The City knowingly allowed APD officers to make reports to ICE on the basis of an arrestee's ethnicity.[20]

Many individuals arrested by the APD are jailed at the Lehigh County Prison in Allentown.  ICE officials have issued, and then cancelled, "many" immigration detainers against inmates

---

[16]     Amended Complaint at ¶ 15.

[17]     Id. at ¶ 19.

[18]     Id. at ¶ 18.

[19]     Id. at ¶ 19.

[20]     Id. at ¶ 20.

-13-

housed at the Lehigh County Prison and at other nearby county prisons and jails.[21]

On November 6, 2008 James T. Hayes, then-Director of Detention and Removal Operations for ICE, issued a memorandum to ICE Field Office Directors cautioning that ICE officers must have probable cause to believe that a person is an alien subject to removal from the United States before making an arrest of the suspected removable alien.[22]

### Arrest and Detention of Mr. Galarza

On Thursday, November 20, 2008, Mr. Galarza was working construction on a house near 6th and Monroe Streets in Allentown. The contractor directing the work, Juan Santilme, was also selling cocaine from the job site.  On that date Mr. Santilme sold cocaine to defendant, Allentown Police Detective Christie Correa, who was working under cover.[23]

---

[21]    Amended Complaint at ¶ 22.  Plaintiff does not allege that Detective Correa or the City knew, or was aware, that ICE had issued and then cancelled "many" immigration detainers, or that such cancelled immigration detainers were based upon information provided by APD officers.  However, based upon the alleged active cooperation between the APD and ICE -- illustrated by the alleged actions of Detective Correa and Officer Szalczyk -- it is reasonable to infer that APD and the City were aware that ICE had issued and then cancelled many immigration detainers for persons held in the Lehigh County Prison and at other local prison facilities.  Accordingly, it is reasonable to infer that the City and the APD were aware that faulty or misleading reports or information provided by APD officers might result in the issuance of an immigration detainer based on that faulty or misleading information.

[22]    Id. at ¶ 23.

[23]    Id. at ¶¶ 28 and 29.

After Mr. Santilme made the sale to Detective Correa, at approximately 2:30 p.m. on November 20, 2008, police arrived at the job site and arrested Mr. Santilme as well as Juan Cruz, Luis Aponte-Maldonado, and plaintiff Galarza.[24]  Plaintiff was charged with conspiring with Mr. Santilme and the other two arrestees to deliver cocaine in violation of Pennsylvania law.[25]

All four arrestees are Hispanic.  Mr. Santilme and Mr. Aponte-Maldonado are citizens of the Dominican Republic. Mr. Cruz is a citizen of Honduras.[26]   However, at the time of his arrest Mr. Aponte-Maldonado told Detective Correa that he was a United States citizen from Puerto Rico.[27]  All four arrestees were taken to the APD where Mr. Galarza was held in a cell separate from the other three arrestees.[28]

A Criminal Complaint against Mr. Galarza was drafted and verified by Detective Correa.[29]  The Criminal Complaint which was sworn out by Detective Correa after the arrest accurately listed Mr. Galarza's place of birth (Perth Amboy, New Jersey), his date of birth (September 20, 1974), his ethnicity (Hispanic),

---

[24]     Amended Complaint at ¶¶ 30 and 31.

[25]     Id. at ¶ 31.

[26]     Id. at ¶ 35.

[27]     Id. at ¶ 34.

[28]     Id. at ¶ 36.

[29]     Id. at ¶ 37.

and his Social Security Number.[30]  At the time of his arrest,
Mr. Galarza was carrying his wallet, which contained his
Pennsylvania driver's license, his debit card, his health
insurance card, and his social security card.[31]  Mr. Galarza's
United States citizenship could have been verified using this
information.[32]

      At approximately 8:00 p.m. on Thursday, November 20,
2011, Mr. Galarza was transported from the APD to the Lehigh
County Prison.  At approximately 10:15 p.m. that evening,
Mr. Galarza's bail on the drug charge was set at $15,000.[33]

      In the early morning hours of Friday, November 21,
2008, Mr. Galarza underwent the Lehigh County Prison admissions
process.  During the admission process, Mr. Galarza again gave
Perth Amboy, New Jersey as his place of birth.  Because he gave a
place of birth inside the United States, the prison official
conducting the intake did not fill out and forward a form to ICE,
as is customary when a prisoner lists a foreign place of birth

---

[30]    Amended Complaint at ¶ 37.

[31]    Id. at ¶ 39.

[32]    Id. at ¶ 38.  It is reasonable to infer that someone, particularly
a police detective or immigration officer, armed with an individual's
purported place of birth, date of birth, driver's license, and social security
number would be capable of verifying that the individual is who he says he is
and was born where he says he was born (which in this case would prove
plaintiff's natural-born United States citizenship).  However, what is not
alleged in the Amended Complaint, and what I cannot infer, is how long it
would take for a detective or immigration official to complete such a
verification.

[33]    Id. at ¶¶ 41-42.

-16-

during admission to Lehigh County Prison.[34]  Lehigh County Prison officials stored Mr. Galarza's wallet after processing his admission.[35]

Sometime during Thursday evening, November 20, 2008, Detective Correa contacted ICE to convey information regarding her arrest of Mr. Galarza and the other three individuals at the 6th and Monroe Street house earlier that day.[36]

Detective Correa told the ICE officer with whom she spoke -- either ICE Deportation Officer Szalczyk or Officer Marino[37] -- that she had arrested four individuals -- including Mr. Galaraz -- on drug charges earlier that afternoon.  She stated to the ICE officer that she believed that all four men had given false information about their identities or were foreign nationals.[38]  Detective Correa gave the ICE officer the information contained on each arrestee's booking sheet, including

---

[34]     Amended Complaint at 43-45.

[35]     Id. at ¶ 47.

[36]     Id. at ¶ 48.

[37]     The Amended Complaint contains alternative allegations regarding who Detective Correa spoke with when she called ICE to provide information concerning the arrests she made.  Mr. Galarza avers either: (a) that Detective Correa spoke directly to Officer Szalczyk who then issued the detainer; or (b) that Detective Correa spoke to Officer Marino, that Officer Marino relayed Detective Correa's information to Officer Szalczyk without investigating or verifying that information, and that Officer Szalczyk then issued the immigration detainer.  (See Amended Complaint at ¶¶ 48, 51, and 54-56.)

[38]     See id. at ¶ 48 and 51

-17-

name, date of birth, place of birth, ethnicity, and social
security number, if given by the arrestee.[39]

Detective Correa gave Mr. Galarza's identification
information to the ICE officer because Mr. Galarza was Hispanic
and was arrested in the company of three other Hispanic men who
did not appear to be United States citizens.[40]  Detective Correa
does not report Caucasian individuals to ICE when those
individuals are arrested with others suspected of being aliens
subject to deportation.[41]

On Friday, November 21, 2008, after receiving the
information provided by Detective Correa, Officer Szalczyk
prepared an Immigration Detainer-Notice of Action (Form I-274)
and faxed the immigration detainer to Lehigh County Prison.[42]
Officer Szalczyk did not seek to verify if the social security
number provided by Mr. Galarza was valid.[43]  The immigration
detainer identified Mr. Galarza as an alien and his nationality
as "Dominican Republic".[44]

Officer Szalczyk decided to issue the immigration

---

[39]   See Amended Complaint at ¶¶ 37, 48 and 50-51.

[40]   Id. at ¶ 52.

[41]   Id. at ¶ 53.

[42]   Id. at ¶¶ 59-60.  A copy of the immigration detainer is contained
in Exhibit B of the Amended Complaint.

[43]   Id. at ¶ 58.

[44]   Id. at ¶ 62; id., Exhibit B.

-18-

detainer for Mr. Galarza either based on the information provided by Detective Correa (directly or through Officer Marino), or because plaintiff had a Hispanic name and was arrested in the company of three other Hispanic men who did not appear to be United States citizens.[45]

If Officer Szalczyk had known or believed that Mr. Galarza was Caucasian, rather than Hispanic, he would not have issued the immigration detainer without first seeking to verify the available identifying information in an effort to confirm that Mr. Galarza was actually an alien subject to deportation and not a United States citizen.[46]

Later on Friday, November 21, 2008, after Officer Szalczyk had issued the immigration detainer regarding Mr. Galarza, a surety company posted Mr. Galarza's bail.  A Lehigh County Prison officer told plaintiff Galarza that his bail had been posted and that plaintiff should prepare to leave Lehigh County Prison shortly.[47]

Shortly thereafter, however, the same prison officer told plaintiff that a detainer was preventing his release on bail.  Plaintiff protested to the prison officer, but the officer told plaintiff that he would have to wait until Monday,

---

[45]    Id. at ¶ 58.

[46]    Id. at ¶ 63.

[47]    Amended Complaint at ¶¶ 67-68.

November 24, 2008 to speak with a Lehigh County Prison counselor about the detainer.[48]  Plaintiff was not informed of the basis for the detainer or that it concerned his citizenship or immigration status until Monday, November 24, 2008.[49]

But for the issuance of the immigration detainer lodged against plaintiff, the Lehigh County Prison would have released him on Friday, November 21, 2008 after his bail was posted. Plaintiff was neither interviewed by any ICE officer nor given notice of the immigration detainer before the detainer was issued by Officer Szalczyk.[50]

Plaintiff was detained at Lehigh County Prison over the weekend, and he did not learn that he was being held on an immigration detainer until he was at breakfast in the prison on Monday, November 24, 2008.  At that time, he was informed by a prison counselor that the detainer concerned his immigration status.  Plaintiff protested the immigration detainer to the counselor and asked the counselor to check the identification information in plaintiff's wallet, which was stored at the prison.  The prison counselor declined to do so.[51]

---

[48]    Amended Complaint at ¶¶ 69-70.

[49]    Id. at ¶ 73.

[50]    Id. at ¶¶ 71-72.

[51]    Id. at ¶¶ 74-77.

Shortly thereafter, two ICE officers met with, and interviewed, Mr. Galarza.  Plaintiff was questioned by the ICE officers and again provided his date of birth and social security number.  The ICE officers left and when they returned, they informed plaintiff that the detainer was being lifted.[52]

On Monday, November 24, 2008 at 2:05 o'clock p.m. Mr. Galarza's immigration detainer was lifted, and he was released from the Lehigh County Prison at 8:28 o'clock p.m. on that evening.[53]

Because of his imprisonment, Mr. Galarza lost a part-time job, lost wages from both his part-time and full-time job, and suffered both emotional distress and physical problems.[54]

<u>DISCUSSION</u>

<u>Officer Marino</u>

Plaintiff names Officer Marino in each of Counts I through VII of the Amended Complaint.  Despite the number of claims asserted against Officer Marino, the factual averments concerning any action actually taken by Officer Marino are sparse.

---

[52]    Amended Complaint at ¶¶ 78-81.  The fact that plaintiff appears to have provided the same information to the ICE officers with whom he spoke on Monday morning as was available to Detective Correa and Officer Szalczyk on the previous Thursday and Friday further supports a reasonable inference that plaintiff's United States citizenship could have been verified either before Mr. Galarza was reported to ICE or before the immigration detainer was issued.

[53]    <u>Id.</u> at ¶¶ 82-83.

[54]    <u>Id.</u> at ¶ 85.

Indeed, the only factual allegations in the Amended Complaint which concern Officer Marino appear in paragraphs 54 and 55.  Because plaintiff is unaware of whether Detective Correa spoke directly to Officer Szalczyk when she called ICE to report plaintiff and his co-arrestees, or whether she spoke to Officer Marino, plaintiff avers in the alternative that

> [Officer] Marino gave [Officer] Szalczyk the information from [Detective] Correa, including the statement...that Plaintiff lied about his identity, [and that] [b]efore [Officer] Marino gave [Officer] Szalczyk this information, [Officer Marino] conducted no investigation of other reasonably available information that would have confirmed Plaintiff's identify and the fact that Plaintiff is a [United States] citizen.[55]

*Qualified Immunity -- Officer Marino*

Because qualified immunity is not merely a defense to liability but an immunity from suit, it is a proper basis for a motion to dismiss under Rule 12(b)(6).  <u>Thomas v. Independence Township</u>, 463 F.3d 285, 291 (3d Cir. 2006).  However, "[a] decision as to qualified immunity is premature when there are unresolved disputes of historical facts relevant to the immunity analysis."  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 242 n.7 (3d Cir. 2008) (<u>citing</u> <u>Curley v. Klem</u>, 499 F.3d 199 (3d Cir. 2007))(internal punctuation omitted).

---

[55]     Amended Complaint at ¶¶ 54-55.

Here, the Amended Complaint displays an internal dispute of historical fact as to whether Officer Marino passed the message from Detective Correa along to Officer Szalczyk, or whether Detective Correa Spoke directly to Officer Szalczyk. However, regardless of which version of the facts, as pled, is accepted as true, Officer Marino is entitled to qualified immunity because no reasonable officer would have believed Officer Marino's conduct to be unlawful.

If the latter scenario is accurate, then the Amended Complaint avers no actions taken by Officer Marino whatsoever, he thus cannot be liable under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389, 91 S.Ct. 1999, 2001, 29 L.Ed.2d 619, 622 (1972), and he is properly dismissed from this action.  If the former scenario is accurate and Officer Marino did relay the information provided by Detective Correa to Officer Szalczyk, then I conclude that he is entitled to qualified immunity and, thus, is properly dismissed from this action.

To overcome an assertion of qualified immunity, a plaintiff must satisfy a two-prong test.  The court must "decide whether the facts [pled], taken in the light most favorable to the plaintiff, demonstrate a constitutional violation" and "whether the constitutional right in question was clearly established." Couden v. Duffy, 446 F.3d 483, 492 (3d Cir. 2006).

-23-

Courts are no longer required to decide the first prong of this test before moving on to the second prong.  Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565, 576 (2009).

The test for whether a constitutional right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden, 446 F.3d at 492; Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 2156 , 150 L. Ed. 2d 272, 282 (2001).  If the officer's mistake as to what the law requires is reasonable, the officer is entitled to qualified immunity.  Id.

Here, I conclude that it would not have been clear to a reasonable immigration officer that relaying information provided by a city Detective about a group of individuals to an immi-gration-officer colleague is an unlawful violation of the constitutional rights of one of the individuals about whom the immigration officer relayed information.  For that reason, Officer Marino is entitled to qualified immunity if, as alternatively alleged, he relayed information from Detective Correa to Officer Szalczyk.  Accordingly, I grant Officer Marino's motion and dismiss all claims against him as a defendant in this action.

<u>Fourth Amendment -- Detective Correa & Officer Szalczyk</u>

An arrest or custodial seizure without probable cause is a Fourth Amendment violation actionable under § 1983 and <u>Bivens</u>. <u>See</u> <u>Walmsley v. Philadelphia</u>, 872 F.2d 546 (3d Cir.1989) (citing cases); <u>Bivens</u>, 403 U.S. at 389, 91 S.Ct. at 2001, 29 L.Ed.2d at 622.

To state a Fourth Amendment claim for false arrest or an unreasonable custodial seizure, a plaintiff must allege that: (1) there was an arrest or custodial seizure; and (2) the arrest or seizure was made without probable cause. <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988).

Here, Mr. Galarza was seized by Detective Correa at the time of his arrest and remained in custody from the time of his arrest until the evening of Friday, November 21, 2008.  At that time, a surety company posted Mr. Galarza's $15,000 bail and, thus, Mr. Galarza was entitled to be released on that bail. However, because the immigration detainer had been issued and faxed to Lehigh County Prison, Mr. Galarza was not released after his bail was posted.  Instead, he was held in prison until Monday, November 24, 2008.

In the Amended Complaint, plaintiff alleges that his detention at Lehigh County Prison pursuant to the immigration detainer was an unreasonable seizure in violation of his rights under the Fourth Amendment because no probable cause existed to

support the detainer.[56]  Specifically, plaintiff alleges that the detainer was issued "without probable cause to believe that he was an 'alien' subject to detention and removal."[57]

Means Intentionally Applied

Officer Szalczyk argues that he cannot be liable for any unreasonable seizure of Mr. Galarza because the detainer did not cause Mr. Galarza's detention.[58]  Officer Szalczyk cites two district court cases to support his assertion that the immigration detainer issued by him did not cause Mr. Galarza to be seized.[59]  Both cases relied on by Officer Scalczyk are significantly distinguishable from this case.

Initially, in Keil v. Spinella, 2011 WL 43491, at *3 (W.D.Mo. January 6, 2011), ICE issued an immigration detainer for Mr. Keil which was served upon the United States Marshal who was then holding Mr. Keil.  However, ICE cancelled the detainer when Mr. Keil was released on bond.  While in both this case and Keil, ICE never took physical custody of the individual named in the

---

[56]     The Amended Complaint states that Mr. Galarza was charged with "conspiring...to deliver cocaine in violation of Pennsylvania law" and that on "April 12, 2010, a jury acquitted Plaintiff of the crime for which he had been arrested on November 20, 2008."  (Amended Complaint at ¶¶ 31, 86.)  Plaintiff does not contend that his November 20, 2008 arrest was unsupported by probable cause.  Rather, the essence of his Fourth Amendment claim here is that no probable cause existed to believe that he was an alien subject to removal or deportation from the United States. (Amended Complaint at ¶ 88.)

[57]     Id. at ¶¶ 107, 126.

[58]     Szalczyk Memorandum at page 6.

[59]     Id. at pages 6-7 n.4.

detainer, here, unlike in Keil, Mr. Galarza was not released upon posting bail. Rather, the Amended Complaint alleges -- and Officer Szalczyk acknowledges[60] -- that Mr. Galarza's detention at Lehigh County Prison was extended because of the detainer issued by Officer Szalczyk.

Next, in Nasious v. Two Unknown B.I.C.E. Agents, 657 F.Supp.2d 1218, 1221 (D.Colo. 2009), an immigration detainer was issued against John Nasious on August 3, 2005 (while he was in state custody pending disposition on a five-count indictment). A four-year term of imprisonment was imposed on November 10, 2005 after Mr. Nasious pled guilty to one count of Forgery-Check/Commercial Instrument. ICE lifted the immigration detainer on April 24, 2006, while Mr. Nasious was still in custody pursuant to his November 10, 2005 sentence. 657 F.Supp.2d at 1221, 1224. Like Keil, supra, and unlike Mr. Galarza's case, the confinement of Mr. Nasious was not extended in any way by the issuance of the immigration detainer.

Indeed, the district court in Nasious stated that "[a]lmost all of the circuit courts considering the issue have determined that the logding of an immigration detainer, *without more*, is insufficient to render someone in custody." Nasious, 657 F.Supp.2d at 1229 (citing cases).

---

[60]     Szalczyk Memorandum at page 7 n.4.

Here, the Amended Complaint alleges something more. The Amended Complaint alleges that Mr. Galarza would have been released on bail three days prior to his actual release but for the immigration detainer issued by defendant Szalczyk. Therefore, the immigration detainer caused a seizure of Mr. Galarza.

Detective Correa contends that she cannot be held liable for an unreasonable seizure of Mr. Galarza because she did not intend for ICE to issue an immigration detainer when she called ICE and reported plaintiff and his co-arrestees.[61] Detective Correa contends that "Plaintiff does not allege that Detective Correa intended a detainer to be issued against him."[62] In her memorandum, Detective Correa contends that she "reported Plaintiff's identity to assist with the identification of three foreign nationals, but ICE assumed that she reported all four as suspected foreign nationals" and therefore, "Plaintiff's detention was an unintended consequence" of Detective Correa's telephone call.[63]

Detective Correa's argument here fails for two reasons. First, her alleged facts conflict with the allegations in paragraph 51 of the Amended Complaint, where plaintiff avers that

---

[61]   Memorandum of Allentown and Correa at page 7.

[62]   Id. at page 8.

[63]   Id. at page 8.

Detective Correa gave the ICE officer she spoke to "reason to believe that she suspected *all four arrestees* of being foreign nationals...."[64]  Thus, plaintiff alleges that Detective Correa gave the ICE officer reason to believe she suspected Mr. Galarza of being a foreign national.  Under the applicable standard of review, discussed above, I must accept plaintiff's alle-gation for the purpose of these motions to dismiss.

Second, Detectice Correa does not dispute that she intentionally telephoned ICE and reported Mr. Galarza, along with his co-arrestees.  Indeed, Detective Correa states that she does not dispute that "§ 1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion."[65]  As plaintiff correctly notes, the United States Court of Appeals for the Third Circuit has held that "§ 1983 anticipates that an individual will be responsible for the natural consequences of his actions."  Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000).

Detective Correa relies on a hypothetical example provided by the Third Circuit in Berg, which the court offered as

---

[64]    Amended Complaint at ¶ 51 (emphasis added).

[65]    Memorandum of Allentown and Correa at page 8 (citing Berg, 219 F.3d at 272).

an illustration of means "intentionally applied".[66]  The Third
Circuit stated that

> [f]or example, if a police officer fires his gun at a
> fleeing robbery suspect and the bullet inadvertently
> strikes an innocent bystander, there has been no Fourth
> Amendment seizure....  If, on the other hand, the
> officer fires his gun directly at the innocent
> bystander in the mistaken belief that the bystander is
> the robber, then a Fourth Amendment seizure has
> occurred.

Berg, 219 F.3d at 269.

Detective Correa suggests that she is akin to the
former officer who intended to shoot the fleeing robbery suspect
but inadvertently shot the innocent bystander.  Plaintiff
contends that Detective Correa is akin to the latter officer who
aimed at and shot the innocent bystander based upon the mistaken
belief that the bytander was actually the robbery suspect.

Here, taking the facts alleged in the Amended Complaint
as true and drawing all reasonable inferences in Mr. Galarza's
favor, as I am required to do, he has the better of the
arguments.  The Amended Complaint alleges that after arresting
plaintiff and three others for conspiracy to distribute cocaine,
Detective Correa reported each of the four individuals --
including Mr. Galarza -- to the ICE officer with whom she spoke
and indicated that she believed all four to be foreign
nationals.[67]

---

[66]     Memorandum of Allentown and Correa at pages 7-8.

[67]     Amended Complaint at ¶¶ 48, 51.

Taking those alleged facts as true, a reasonable inference can be drawn that Detective Correa intended to report Mr. Galarza to ICE as someone she believed to be a foreign national and who had been arrested on a narcotics charge.  It is also reasonable to infer that the issuance of an immigration detainer against Mr. Galarza would be the natural consequence of Detective Correa's report to ICE, particularly in light of alleged history of collaboration between the Allentown Police Department and ICE.

For these reasons, the arguments by Detective Correa and Officer Szalczyk -- that their intentional action did not cause the immigration detainer, which, in turn, caused Mr. Galarza's detention after his bail was posted and he was entitled to be released -- fail.

### Probable Cause

Plaintiff contends that neither Detective Correa nor Officer Szalczyk had probable cause "to believe that Mr. Galarza was an alien subject to removal and detention."[68]

Detective Correa has not directly addressed the issue of whether or not probable cause existed to support the issuance of an immigration detainer against Mr. Galarza.[69]

---

[68]   N.T. at page 36.

[69]   <u>See</u> Memorandum of City of Allentown and Correa at pages 6-12.

-31-

Officer Szalczyk asserts that a reasonable officer in his position would have believed that issuing a detainer was lawful under the circumstances.  Because Officer Szalczyk has conceded that probable cause is required before a lawful detainer can issue, I take his assertion to mean that a reasonable officer would have believed that there was probable cause to support the issuance of an immigration detainer.

Typically, the existence of probable cause is a question of fact which the jury will decide in a § 1983 or Bivens action.  Collins v. Christie, 337 Fed.Appx. 188, 193 (3d Cir. 2009)(citing Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998)).  However, "a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding and enter summary judgment."  Id. (quoting Merkle v. Upper Dublin School District, 211 F.3d 782, 788789 (3d Cir. 2000)).

Plaintiff's formulation of the requisite probable cause notwithstanding, the requirements for the issuance of an immigration detainer differ from the requirements for an alien to be deportable.

The statute establishing the various "[c]lasses of deportable aliens" provides, in pertinent part, that

> [a]ny alien who at any time after admission *has been convicted* of a violation of (or a conspiracy

-32-

> or attempt to violate) any law or regulation of a
> State, the United States, or a foreign country
> relating to a controlled substance (as defined in
> section 802 of Title 21), other than a single
> offense involving possession for one's own use of
> 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(I)(emphasis added).

Although Detective Correa and Officer Szalczyk acted after plaintiff was arrested and charged with conspiracy to violate the laws of the Commonwealth of Pennsylvania regulating controlled substances, nothing in the Amended Complaint suggest that he had been convicted of any such crime.  Moreover, none of defendants' motions to dismiss or supporting documentation suggest any reason beyond plaintiff's arrest on November 20, 2008 which would support probable cause to believe that he was deportable.

Based on the facts alleged in the Amended Complaint, and upon the fact that a criminal defendant is presumed innocent until proven guilty, and the fact that a criminal arrest provides no evidence of guilt, I cannot conclude that Detective Correa or Officer Szalczyk had probable cause to believe that Mr. Galarza was deportable, or that any reasonable officer would have believed that probable cause existed to believe that Mr. Galarza was deportable.

While it is clear that facts pled in the Amended Complaint would not provide probable cause to believe that Mr. Galarza was deportable, the question remains whether or not

probable cause existed to support the issuance of an immigration detainer.

The statute establishing the "[p]owers of immigration officers and employees" provides for and regulates the "[d]etainer of aliens for violation of controlled substance laws". 8 U.S.C. § 1357(d). It provides that

> [i]n the case of an *alien* who is *arrested by* a Federal, State, or *local law enforcement official for a violation of any law relating to controlled substances*, if the official (or another official)--
>
> > (1) *has reason to believe that the alien may not have been lawfully admitted to the United States or otherwise is not lawfully present in the United States*,
> >
> > (2) expeditiously informs an appropriate officer or employee of the Service authorized and designated by the Attorney General of the arrest and of facts concerning the status of the alien, and
> >
> > (3) requests the Service to determine promptly whether or not to issue a detainer to detain the alien,
>
> the officer or employee of the Service shall promptly determine whether or not to issue such a detainer. If such a detainer is issued and the alien is not otherwise detained by Federal, State, or local officials, the Attorney General shall effectively and expeditiously take custody of the alien.

8 U.S.C. § 1357(d)(emphasis added).

The phrase "reason to believe" in § 1357(d)(1) has been construed to require probable cause.  United States v. Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010)(citing cases).

Therefore, in order to issue a detainer pursuant to § 1357, there must be probable cause to believe that the subject of the detainer is (1) an "alien" who (2) "may not have been lawfully admitted to the United States" or (3) "otherwise is not lawfully present in the United States".  8 U.S.C. § 1357(d)(1) (emphasis added).

Because it is clear that Mr. Galarza was arrested for allegedly violating Pennsylvania's controlled-substance laws, the key inquiry with respect to the assertion of qualified immunity by Detective Correa and Officer Szalczyk is whether the information possessed by Detective Correa and Officer Szalczyk provided probable cause to believe that Mr. Galarza was (1) an "alien" who (2) "may not have been lawfully admitted to the United States" or (3) "otherwise is not lawfully present in the United States", 8 U.S.C. § 1357(d)(1).  See Couden, 446 F.3d at 492; 8 U.S.C. § 1357.

The facts and circumstances, as alleged in the Amended Complaint and relevant to the question of probable cause, are as follows.  The contractor who was supervising the construction site where Mr. Galarza was working on Thursday, November 28, 2008 was selling cocaine at the site.  At approximately 2:30 p.m., the

contractor -- Juan Santilme -- sold cocaine to Detective Correa, who was working under cover.  Mr. Santilme, Luis Aponte-Maldonado, Juan Cruz, and plaintiff Ernesto Galarza were arrested for allegedly conspiring to distribute cocaine in violation of Pennsylvania law.[70]

All four arrestees are Hispanic.  Mr. Cruz is a citizen of Honduras.  Mr. Santilme is a citizen of the Dominican Republic.  Mr. Aponte-Maldonado is also a citizen of the Dominican Republic, but after his arrest he told Detective Correa that he was a United States citizen born in Puerto Rico.  Plaintiff is a Hispanic man of Puerto Rican heritage who was born in Perth Amboy, New Jersey and is a natural-born United States Citizen.  Plaintiff speaks English and Spanish.[71]

The fact that Mr. Galarza is Hispanic and was working at a construction site with three other Hispanic men -- two of whom are citizens of foreign countries and another who claimed to have been born in Puerto Rico but is a citizen of the Dominican Republic -- does not amount to probable cause to believe that Mr. Galarza is an alien not lawfully present in the United States.

---

[70]    Amended Complaint at ¶¶ 28-31.

[71]    Id. at ¶¶ 25-27, 32-36.  In his reply brief, Officer Szalczyk treats plaintiff's averment that Detective Correa's "gave the ICE agent to whom she spoke *reason to believe* that she suspected all four arrestees of being foreign nationals" as the equivalent of an admission by plaintiff that Officer Szalczyk had probable cause to support the immigration detainer. (Szalczyk Reply Brief at page 2 (quoting Amended Complaint at ¶ 51).)  That interpretation offered by Officer Szalczyk would be both inconsistent with the facts pled and claims asserted by plaintiff, and a legal conclusion, which I am not required to treat as true for purposes of a motion to dismiss.

Moreover, the additional facts available to Detective Correa and Officer Szalczyk provide no further assistance.  I recognize that false identity documents can be obtained and that none of the documents in Mr. Galarza's possession alone or together definitively establish United States citizenship.

However, Mr. Galarza's possession of his driver's license, Social Security card, debit card, and health insurance card[72] suggest United States citizenship at least as strongly as they suggest foreign citizenship.  Therefore, upon the facts plead in the Amended Complaint, I conclude that Detective Correa and Officer Szalczyk lacked probable cause to support the issuance of an immigration detainer pursuant to 8 U.S.C. § 1357.

*Qualified Immunity -- Officer Szalczyk and Detective Correa*

Plaintiff contends that Officer Szalczyk is not entitled to qualified immunity because "[n]o reasonable officer would have believed it lawful to cause Mr. Galarza's detention by issuing a detainer without probable cause."[73]  Similarly, plaintiff contends that Detective Correa is not entitled to qualified immunity because her alleged conduct violated plaintiff's "clearly established right[] not to be detained without probable cause".[74]

---

[72]    Amended Complaint at ¶ 39.

[73]    Memorandum Opposing Szalczyk at page 22.

[74]    Memorandum Opposing Allentown and Correa at page 14.

-37-

The United States Supreme Court has "repeatedly told courts...not to define clearly established law at a high level of generality."  Ashcroft v. al-Kidd, ___ U.S. ___, ___, 131 S.Ct. 2074, 2084, 179 L.Ed.2d 1149, 1159-1160 (U.S. 2011). The Court specifically noted that "[t]he general proposition, for example, that an unreasonable search and seizure violates the *Fourth Amendment* is of little help in determining whether the violative nature of particular conduct is clearly established." Id. 131 S.Ct. at 2084, 179 L.Ed.2d at 1160 (italics in original).

Here, plaintiff's assertion that detaining Mr. Galarza pursuant to an immigration detainer without probable cause is constitutionally unsound -- which none of the defendants dispute -- provides little more guidance than the proposition used by the United States Supreme Court in the above example.

A precedential decision directly on point is not required for the contours of a right to be "sufficiently clear that *every reasonable official* would have understood that what he [was] doing violat[ed] that right."  al-Kidd, ___ U.S. at ___, 131 S.Ct. at 2083, 179 L.Ed.2d at 1159 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)(internal quotations omitted))(emphasis added).

Nonetheless, "existing precedent must have placed the statutory or constitutional question beyond doubt."  Id. (citing Anderson, supra; Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct.

-38-

1092, 89 L. Ed. 2d 271 (1986)).  Qualified immunity provides government officials "breathing room to make reasonable but mistaken judgments about open legal questions" and when "properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"  al-Kidd, ___ U.S. at ___, 131 S.Ct. at 2083, 179 L.Ed.2d at 1159 (quoting Malley, 475 U.S. at 341, 106 S.Ct. at 1096, 89 L.Ed.2d at 279).

Accordingly, unless "every reasonable official would have understood" that the information possessed by Detective Correa and Officer Szalczyk, viewed in the totality of the circumstances, did not provide probable cause[75] to believe Mr. Galarza was (1) an "alien" who (2) "may not have been lawfully admitted to the United States" or (3) "otherwise is not lawfully present in the United States", 8 U.S.C. § 1357(d)(1), then Detective Correa and Officer Szalczyk are entitled to qualified immunity.  See al-Kidd, ___ U.S. at ___, 131 S.Ct. at 2083, 179 L.Ed.2d at 1159.

As noted above, I conclude that the facts plead in the Amended Complaint did not provide probable cause to believe that plaintiff was an alien properly subject to a detainer under

---

[75]      "Probable cause exists where the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that", Safford Unified School District No. 1 v. Redding, 557 U.S. 364, ___, 129 S.Ct. 2633, 2639, 174 L.Ed.2d 354, 361 (2009) (alterations in original and internal quotations omitted),  Mr. Galarza was (1) an "alien" who (2) "may not have been lawfully admitted to the United States" or (3) "otherwise is not lawfully present in the United States". 8 U.S.C. § 1357(d)(1).

§ 1357.  Moreover, I cannot conclude based upon these facts that a reasonable officer would have concluded that probable cause existed.  Therefore, I deny Detective Correa and Officer Szalczyk's assertion of qualified immunity as grounds for dismissal of plaintiff's Fourth Amendment claims without prejudice for Detective Correa and Officer Szalczyk to raise the defense of qualified immunity after the record is developed during discovery.

Equal Protection -- Detective Correa and Officer Szalczyk

The Amended Complaint alleges that Detective Correa and Officer Szalczyk violated plaintiff's Federal constitutional right to equal protection of law pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.[76]

Racial profiling, or selective enforcement of the law, is a violation of the Equal Protection Clause.  Sow v. Fortville Police Deptartment, 636 F.3d 293, 303 (7th Cir. 2011).  In order to state an equal protection claim "in the racial profiling context", a plaintiff must allege and provide sufficient factual averments to support a reasonable inference that the challenged conduct or action (1) had a "discriminatory effect", and (2) was motivated by a discriminatory purpose" Carrasca v. Pomeroy, 313 F.3d 828, 834 (3d Cir. 2002)(citing Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002)).

---

[76]   See Amended Complaint, Counts I and V.

-40-

To establish discriminatory effect, a plaintiff must allege and provide factual averments supporting a reasonable inference that he is a member of a protected class and "similarly situated" persons in an unprotected class were treated differently.  Bradley, 299 F.3d at 206.

The parties do not dispute that Mr. Galarza, who is Hispanic, is a member of a constitutionally protected class. Thus, with respect to the first element of his equal protection claims against Detective Correa and Officer Szalczyk, the key question is whether Mr. Galarza has sufficiently pled that similarly situated persons outside of the protected class were treated differently.  See id.

Plaintiff is not required to identify in the Complaint specific instances where others have been treated differently. Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).  Rather, a general allegation that plaintiff has been treated differently from others similarly situated will suffice. Id. at 244.

Here, plaintiff avers that "[Detective] Correa does not report to ICE about Caucausians arrested with other people whom she believes to be foreign nationals".[77]  Moreover, plaintiff avers that "[h]ad [Officer] Szalczyk known or believed [Mr. Ga-larza] to be Caucasian, [Officer] Szalczyk would not have issued

---

[77]    Amended Complaint at ¶ 53.

the immigration detainer [against Mr. Galarza] without at least
checking the available identifying information" to assess Mr.
Galarza's citizenship.[78]

In short, taking these factual averments as true,
plaintiff's Amended Complaint supports a reasonable inference
that Detective Correa and Officer Szalczyk would have treated
plaintiff differently if plaintiff were not Hispanic.  Therefore,
I conclude that the first element of plaintiff's equal protection
claim is satisfied as to Detective Correa and Officer Szalczyk.

Next, I must determine whether plaintiff has
sufficiently pled that Detective Correa and Officer Szalczyk
acted with a discriminatory purpose.  See Carrasca, 313 F.3d
at 834 (citing Bradley, 299 F.3d at 205).

The United State Supreme Court has stated that a
plaintiff asserting an equal protection claim "must plead...that
the defendant acted with a discriminatory purpose."  Iqbal,
556 U.S. at ___, 129 S.Ct. at 1948, 173 L.Ed.2d at 883.  The
Supreme Court went on to explain that in order to state an equal
protection claim "based upon a violation of a clearly established
right", a plaintiff must plead sufficient factual matter to
permit a reasonable inference that the government-official
defendant acted "for the purpose of discriminating on account of

---

[78]      Amended Complaint at ¶ 63.

-42-

race", ethnicity or national origin.  Iqbal, 556 U.S. at ___,
129 S.Ct. at 1949, 173 L.Ed.2d at 889.

Here, plaintiff alleges that Detective Correa
"knew...that plaintiff was a [United States] citizen"[79] when she
called ICE and informed either Officer Szalczyk or Officer Marino
that Mr. Galarza was arrested with three other Hispanic men and
"gave the ICE agent to whom she spoke reason to believe that she
suspected all four arrestees [-- including plaintiff --] of being
foreign nationals or of having given false information about
their identities."[80]

Plaintiff avers that Detective Correa reported
plaintiff to ICE as someone she suspected of being a foreign
national "even though she knew...that Plaintiff was a U.S.
citizen".[81]

Plaintiff does not go so far as to allege that Officer
Szalczyk knew that plaintiff was a United States citizen.
Rather, plaintiff avers that Officer Szalczyk had information in
his possession (plaintiff's correct name, date and place of
birth, ethnicity and social security number) which would have

---

[79]     Amended Complaint at ¶ 38.

[80]     Id. at ¶ 51.

[81]     Id. at ¶ 51.

permitted Officer Szalczyk to verify plaintiff's United States citizenship before issuing the immigration detainer.[82]

Plaintiff further avers that Officer Szalczyk made a decision not to utilize this information to verify plaintiff's citizenship because plaintiff has "a Hispanic name" and "was arrested in the company of three other Hispanic men who did not appear to be citizens."[83]  In short, plaintiff avers that Officer Szalczyk "took his actions in issuing an immigration detainer...and stating that plaintiff was from the Dominican Republic...and in failing to verify" plaintiff's citizenship because of plaintiff's Hispanic ethnicity.[84]

Based on these averments concerning Detective Correa and Officer Szalczyk, and drawing all reasonable inferences in plaintiff's favor, as I am required to do, I conclude that plaintiff's Amended Complaint supports a reasonable inference that (1) Detective Correa acted with a discriminatory purpose when she telephoned ICE and reported plaintiff to Officer Marino or Officer Szalczyk, and (2) Officer Szalczyk acted with a discriminatory purpose in deciding not to verify plaintiff's citizenship based up the information provided Detective Correa

---

[82]   Amended Complaint at ¶¶ 50, 57-58.

[83]   Id. at ¶ 58.

[84]   Id. at ¶ 63.

and issuing an immigration detainer against plaintiff "because of Plaintiff's ethnicity".[85]

Furthermore, to the extent that Detective Correa and Officer Szalczyk seek to dismiss plaintiff's equal protection claims against each of them on the grounds of qualified immunity, I deny those motions because it would be clear to a reasonable officer that such allegedly-intentional racially-discriminatory conduct was unlawful.  See Couden, 446 F.3d at 492.

### Procedural Due Process -- Officer Szalczyk

Plaintiff's Amended Complaint alleges that Officer Szalczyk violated plaintiff's right to procedural due process.[86] Specifically, Mr. Galarza alleges that by issuing the immigration detainer against him, Officer Szalczyk deprived him of his liberty without constitutionally-sufficient notice and an opportunity to be heard.

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before a government actor can deprive an individual of a liberty or property interest.  Rogers v. United States, 696 F.Supp.2d 472, 500 (W.D.Pa. 2010).  In order to establish a procedural due process violation, a plaintiff must demonstrate that he has been deprived

---

[85]     Amended Complaint at ¶ 63.

[86]     Id., Counts III and VI.

of a constitutionally-protected property or liberty interest.

Daniels v. Williams, 474 U.S. 327, 339, 106 S.Ct. 662, 88 L.Ed.2d
662 (1986).

Here, as discussed above, the Amended Complaint alleges
that the immigration detainer issued by Officer Szalczyk
prevented plaintiff's release.  Thus, the immigration detainer
deprived plaintiff of his liberty.

However, I will dismiss plaintiff's procedural due
process claim against Officer Szalczyk based upon qualified
immunity.

The regulation promulgated by the United States
Department of Homeland Security governing the temporary detention
of aliens at the Department's request provides as follows:

> Upon a determination by the Department to issue a
> detainer for an alien not otherwise detained by a
> criminal justice agency, such agency shall main-
> tain custody of the alien for a period not to
> exceed 48 hours, excluding Saturdays, Sundays, and
> holidays in order to permit assumption of custody
> by the Department.

8 C.F.R. § 287.7(d).

Because the Department's regulation expressly provides
that an alien subject to an immigration detainer shall be held
for "a period not to exceed 48 hours, excluding Saturdays,
Sundays, and holidays", I conclude that even if the period of
detention specified by the regulation were found to be
unconstitutional, it would not be clear to every reasonable

officer that the detention for a period expressly provided by
federal regulation was unlawful.  Therefore, Officer Szalczyk is
entitled to qualified immunity from plaintiff's procedural due
process claim against him.

### Municipal Liability

Because municipalities are not subject to respondeat
superior liability, municipal liability "must be founded upon
evidence that the government unit itself supported a violation of
constitutional rights."  Bielevicz v. Dubinon, 915 F.2d 845, 850
(3d Cir. 1990).

Accordingly, in a civil rights action against a
municipality pursuant to § 1983, "the municipality can only be
liable when the alleged constitutional transgression *implements
or executes* a policy, regulation, or decision officially adopted
by the governing body or informally adopted by custom."  Beck v.
City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)(citing Monell
v. City of New York Department of Social Services, 436 U.S. 658,
98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

The municipal policy or custom must be the "moving
force" behind the constitutional violation such that there is a
direct link between the municipal policy or custom and the
deprivation of constitutional rights.  Sullivan v. Warminster
Township, 765 F.Supp.2d 687, 703 (E.D.Pa. 2011)(Surrick,J.)
(quoting Board of County Commissioners of Bryan County, Oklahoma

v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626, 639 (1997).  In short, where a municipality's unconstitutional policy or custom is the moving force behind a violation of a plaintiff's rights, the municipality can be held liable for the violation pursuant to § 1983 and Monell.

Here, neither of the policies identified in plaintiff's Amended Complaint is unconstitutional.  Indeed, both are consistent with federal statutes and regulations.

*Lehigh County*

The only policy or custom which plaintiff attributes to defendant Lehigh County is the policy of detaining any person being held in Lehigh County Prison who is named in an immigration detainer.[87]  This policy is consistent with the regulations promulgated by the United States Department of Homeland Security governing immigration detainers.

Homeland Security regulations provide:

> (a) Detainers in general.  Detainers are issued pursuant to sections 236 and 287 of the Act and this chapter 1. Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in

---

[87]    See Amended Complaint at ¶¶ 71, 90-91; Plaintiff's Memorandum Opposing Motion of Lehigh County at pages 2, 12.

order for the Department to arrange to assume
custody, in situations when gaining immediate
physical custody is either impracticable or
impossible....

(d) Temporary detention at Department request.
Upon a determination by the Department to issue a
detainer for an alien not otherwise detained by a
criminal justice agency, such agency shall
maintain custody of the alien for a period not to
exceed 48 hours, excluding Saturdays, Sundays, and
holidays in order to permit assumption of custody
by the Department.

8 C.F.R. § 287.7(a) and (d).

Thus, although an immigration detainer "serves to
advise another law enforcement agency that the Department seeks
custody" and "is a request" to the federal, state, or local law
enforcement agency presently holding the individual named in the
detainer that it "advise the Department, prior to release" of
that individual, id. § 287.7(a), once the immigration detainer is
issued, the local, state, or federal agency then holding the
individual "shall" maintain custody.  Id. § 287.7(d).  Moreover,
although the period of time that the agency with custody when the
immigration detainer is issued is required to hold the individual
is 48 hours, those 48 hours excludes Saturdays, Sundays, and
holidays.  Therefore, I grant Lehigh County's motion and dismiss
plaintiff's procedural due process claim against it.

Plaintiff does not allege that it is Lehigh County's
policy to detain persons named in immigration detainers without
probable casue.  Plaintiff does not allege that it is Lehigh

County's policy to detain only persons of a certain race or ethnicity who are named in an immigration detainer.  Plaintiff does not allege that it is Lehigh County's policy to detain persons named in immigration detainers for longer periods of time than permitted by federal DHS regulations.  For these reasons, I grant Lehigh County's motion and dismiss plaintiff's Fourth Amendment, equal protection, and procedural due process claims against the County.

In any event, Lehigh County did not maintain custody of plaintiff for more than the 48 hours it was required to do so.  Pursuant to the Department of Homeland Security Regulation 287.7(d), quoted above, because ICE isued a detainer for plaintiff, the Lehigh County Prison (a "criminal justice agency") was required to maintain custody of him after he was "not otherwise detained by a criminal justice agency" for a period not to exceed 48 hours, excluding Saturdays and Sundays, in order to permit assumption of his custody by the Department of Homeland Security.

Plaintiff was incarcerated on the state drug charge at approximately 8:00 p.m. on Thursday, November 20, 2008.  Bail was set in the amount of $15,000 at 10:15 p.m. on Thursday night.  Bail was posted on plaintiff's behalf the next day, Friday, November 21.  (The time when bail was posted does not appear in the Amended Complaint.)  Plaintiff's immigration detainer was

-50-

lifted by ICE at 2:05 p.m. Monday, November 24, and he was released from Lehigh County Prison on Monday at 8:28 p.m.[88]

Plaintiff became a person "not otherwise detained by a criminal justice agency" when his bail was posted. Theoretically, that could have occurred anytime during the 24 hour period from the beginning of Friday at midnight until the beginning of Saturday at midnight.  Assuming plaintiff's bail was posted at the earliest moment on Friday (one minute after midnight or 12:01 a.m. Friday), the prison was required to hold him in custody until the end of Monday, November 24 (11:59 p.m. Monday, or one minute before midnight Tuesday.  In other words, the prison was required to hold plaintiff for 24 hours Friday plus 24 hours Monday, which equals the 48 hours total (Saturdays and Sundays are excluded) to give ICE the opportunity to take him into their custody.

When ICE lifted its detainer at 2:05 p.m. Monday, 38 hours of the 48 hour period had expired (24 hours on Friday plus 14 hours on Monday) under my example.  When plaintiff was actually released from prison at 8:28 p.m. on Monday, 44 ½ hours of the 48 hour period had expired (24 hours on Friday plus 20 ½ hours on Monday).  Either way, plaintiff was released before the expiration of the 48 hour period that the prison was required to hold him to give ICE an opportunity to pick him up.

---

[88]    Amended Complaint at ¶¶ 40-41, 59-60, 67-70 and 82-83.

*City of Allentown*

Concerning the City of Allentown, plaintiff avers that it is the policy of the City for the Allentown Police Department and its officers to "actively work with ICE to identify criminal aliens who have committed criminal offenses within the City of Allentown and to take appropriate steps for deportation where warranted",[89] and that the City of Allentown's "practice of aggressive pursuit of criminal alien detention...led to Plaintiff's imprisonment on a false immigration detainer."[90]

As the City notes in its memorandum in support of its motion to dismiss, its policy of active cooperation with ICE is authorized by various federal statutory provisions.[91]  Most notably, 8 U.S.C § 1103(c) expressly permits cooperative agreements between federal immigration officials and State and local law enforcement agencies "for the purpose of assisting in the enforcement of the immigration laws."

Plaintiff seeks to hold defendant City of Allentown liable for the alleged deprivation of his Fourth Amendment and equal protection rights.  However, the policy upon which he seeks to establish municipal liability is not itself discriminatory.  Like Lehigh County's policy of enforcing all immigration

---

[89]    Amended Complaint at ¶ 13, Exhibit .

[90]    Id. at ¶ 21.

[91]    Memorandum of Allentown and Correa at page 19 (citing 8 U.S.C. §§ 1324(c), 1357(g), 1103(c), and § 1252c).

detainers regardless of the race of the individual named in the
detainer, the policy that plaintiff attributes to the City is one
of consistent, active cooperation to identify aliens who may be
subject to detention and removal.

In other words, the Amended Complaint does not allege
that the City's policy of cooperation applies only to suspected
aliens who are Hispanic.  Moreover, plaintiff does not allege
that it is the City's policy for APD officers to fabricate
information and report it to ICE in order to cause the issuance
of immigration detainers.

Plaintiff also seeks to establish municipal liability
against the City based on the City's alleged failure to train its
police officers.  Specifically, plaintiff avers that despite the
"regular collaboration between [APD] officers and ICE, the City
of Allentown has never supplied any training or arranged for its
officers to receive training from any other source, about
investigating immigration status, when to provide information to
ICE, or what information to provide."[92]

The United States Court of Appeals for the Third
Circuit has stated that "[e]stablishing municipal liability on a
failure to train claim under § 1983 is difficult."  Reitz v.
County of Bucks, 125 F.3d 139, 145 (3d Cir.1997). Generally,
deficient training can only amount to the requisite deliberate

_____

[92]      Amended Complaint at ¶ 13.

-53-

indifference "where the failure to train has caused a pattern of violations." Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). Here, plaintiff has not pled facts alleging a pattern of violations, but instead seeks to proceed on a single-violation failure-to-train claim.

Absent a pattern of violaitions, the plaintiff must allege sufficient facts that the case at bar falls within that "narrow range of circumstances" in which "a violation of federal rights may be a *highly predictable* consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998).

Accordingly, plaintiff must demonstrate that in light of the duties assigned to the officers, "the need for more or different training is so obvious, and the inadequacy [of the officers' training is] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Sullivan, 765 F.Supp.2d at 703-704 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 396, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Here, the alleged policy pursuant to which APD officers alert ICE to individuals who may be aliens subject to detention and removal so that ICE is aware of the individual and, thus, can

determine whether or not to issue a detainer, does not make the need for more or different training "so obvious" that the policy can be said to constitute the City's deliberate indifference to the Fourth Amendment and equal protection rights of Mr. Galarza. Accordingly, I grant the City's motion and dismiss plaintiff's Fourth Amendment and equal protection claims against the City.

<u>CONCLUSION</u>

For the reasons expressed above, Defendant Mark Szalczyk's Motion to Dismiss the Amended Complaint is granted in part.  Plaintiff's procedural due process claim against defendant Mark Szalczyk is dismissed from the First Amended Complaint. However, Defendant Mark Szalczyk's Motion to Dismiss the Amended Complaint is denied to the extent that it seeks to dismiss plaintiff's Fourth Amendment and equal protection claims against defendant Mark Szalczyk.

Additionally, Defendant Gregory Marino's Motion to Dismiss the Amended Complaint is granted, and plaintiff's claims against defendant Gregory Marino are dismissed from the First Amended Complaint.

Next, Defendants, City of Allentown and Christie Correa's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) is granted in part.  Plaintiff's procedural due process claim against defendant Christie Correa and all claims against defendant City of Allentown are dismissed

from the First Amended Complaint.  However, the Allentown/Correa Motion is denied to the extent that it seeks to dismiss plaintiff's Fourth Amendment and equal protection claims against defendant Christie Correa.

Finally, Defendant Lehigh County's Motion to Dismiss the First Amended Complaint Under F.R.C.P. 12(b)(6) is granted, and plaintiff's claims against Lehigh County are dismissed from the First Amended Complaint.